IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 2:11cr33 |
| | ) | |
| MOHAMMAD SAAILI SHIBIN, | ) | |
| | ) | |
| Defendant. | ) | |

## SENTENCING POSITION OF THE UNITED STATES

The United States of America, through its attorneys, Neil H. MacBride, United States Attorney, and Joseph E. DePadilla, Benjamin L. Hatch, and Brian Samuels, Assistant United States Attorneys, hereby submits its position with respect to the defendant's sentencing factors. The United States has no objections to the Presentence Investigation Report ("PSR"). The government respectfully recommends the following sentences on the following counts:

With regard to each of Counts 1 and 7, the sentence mandated by statute is life imprisonment.

With regard to each of Counts 2, 3, 8, 9, 10 and 11, a sentence of life imprisonment, consistent with the advisory sentencing guideline range.

With regard to each of counts 4, 5, 12 and 13, a sentence of 20 years (or 240 months), consistent with the statutory maximum penalty for those offenses and the advisory sentencing guideline range.

With regard to count 6, a sentence of 120 months, run consecutive to all other sentences. With regard to each of counts 14 and 15, a sentence of life imprisonment, run consecutive to all other sentences

.

## I. Background

The facts at trial established that defendant Shibin was a key participant in two of the most heinous acts of piracy in modern memory. In the first, the crew members of the M/V Marida Marguerite were repeatedly and brutally tortured by Shibin and his confederates to extract a ransom of $5 million. In the second, Shibin's confederates seized the S/V Quest and murdered the four defenseless Americans on that vessel.

Shibin's primary role in the criminal enterprise that is Somali piracy was to serve as a negotiator and translator. As the Court knows from hearing the evidence, Shibin performed this role in a committed manner throughout most of the negotiations regarding the Marida Marguerite. Shibin showed himself to be a master of duplicity. He claimed to the shipping company that he was on the ship to help the hostages. But several of the hostages testified at trial and told how Shibin turned a deaf ear to their pleas for help. Indeed, Shibin used traumatic experiences for the hostages – such as the "Black September" period of torture and the pirates' threat to turn the hostages over to the terrorist organization al-Shabaab – as a bargaining chip to attempt to obtain a higher ransom payment from the company. Shibin was no mere bystander when it came to the torture. The hostage witnesses recounted how Shibin interrogated them after the torture, attempting to use their weakened state and the threat of further torture to extract the information that he and the other pirates wanted.

While Shibin's primary job was as a negotiator, he was not above performing the role of an armed thug. When Shibin was temporarily demoted in favor of negotiator Leon, Shibin carried an AK-47 and served as a regular pirate guard. Shibin fought to get his negotiator job back and was ultimately successful. And as the ransom negotiations were wrapping up, Shibin

had the nerve to ask the shipping company to pay *him* for his efforts.

The pirates, including Shibin, who held the Marida Marguerite were a particularly depraved lot. To counsel's knowledge, the Marida Marguerite piracy event was the worst instance of torture and mistreatment by Somali pirates on record.

Shibin emerged from the Marida Marguerite ransom payment flush with cash. Rather than leaving the world of piracy and settling down, Shibin decided to continue participating in piracy. He joined the conspiracy that would ultimately result in the seizure of the Quest. As the pirates were sailing the Quest back to Somalia, Shibin was preparing himself for the ransom negotiations by researching the value of the boat and the contact information for the hostages.

After the murder of the four Americans on the Quest, Shibin left Somalia and "lost" (according to him) the phone he had used to research the Americans. When he was later tracked down by the FBI, Shibin gave two different stories on two different days about why he had been researching the Quest.

The jury convicted Shibin on all counts after a two week trial.

## II. Position on Sentencing and Argument

"[I]n imposing a sentence after *Booker*, the district court must engage in a multi-step process. First, the court must correctly determine, after making appropriate findings of fact, the applicable guideline range." *United States v. Moreland*, 437 F.3d 424, 432 (4th Cir. 2006). "Next, the court must 'determine whether a sentence within that range serves the factors set forth in § 3553(a) and, if not, select a sentence [within statutory limits] that does serve those factors.'" *Id.* (quoting *United States v. Green*, 436 F.3d 449, 455 (4th Cir. 2006)). In making this determination,

> a sentencing court must consider "the nature and circumstances of the offense and the history and characteristics of the defendant" and the need "to reflect the seriousness of the offense," provide "just punishment," "afford adequate deterrence," "protect the public," and "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

*United States v. Hampton*, 441 F.3d 284, 287 (4th Cir. 2006) (quoting 18 U.S.C. § 3553(a)).

Four counts in the superseding indictment carry mandatory life sentences, and the government submits that life is the appropriate sentence. In this section, the government addresses the Section 3553(a) factors as they apply to the remaining, non-mandatory counts.[1]

Regarding the nature and circumstances of the offenses, the phenomenon of modern Somali piracy is terrible by its very nature. Innocent people are swept at gunpoint from the seas and held by dangerous men for as long as it takes to extract the maximum ransom. But even in this realm of violence and greed, Shibin's crimes stand out. The period the hostages on the Marida Marguerite were held – roughly seven and a half months – was prolonged. And the treatment of the hostages was the worst on record. The Court heard first hand from several of the torture victims. The pain and humiliation they endured at the hands of Shibin and his confederates has permanently scarred them all. Additionally the employees of the shipping company were similarly affected by Shibin's actions because they labored for over seven months to free their co-workers and had to live with the knowledge that the men they were attempting to free were being tortured.

Regarding the Quest piracy event, the Court heard from the family members of the

---

[1] Count 6 carries a mandatory minimum sentence of 120 months consecutive. That is also the advisory guideline sentence for that count, and the government submits that it is an appropriate sentence for that count.

victims. The murdered Americans were good people who posed no danger to the pirates. And yet the pirates killed them rather than release them to the Navy.

While Shibin professed in his negotiations with the German shipping company to be horrified by what the pirates were doing, the fact is that he viewed these piracy events as business opportunities. While hostages were tortured or killed, Shibin grew fat off of eating whole chickens and spending his ill-gotten gains.

Regarding Shibin's role in these crimes and avoiding unwarranted disparities, Shibin is the highest level pirate even convicted in a United States court. Without the special skills that Shibin brought to the negotiations – the ability to speak multiple languages and research the internet – Somali piracy could not function. Shibin was not simply a mouthpiece for the pirates. He would research the value of the ships and consult regarding what ransom to demand. He actively participated in manipulating the crew of the Marida Marguerite to obtain information needed by the pirates to continue holding and utilizing the ship and to place pressure on the shipping company to pay the ransom demand. And Shibin's actions actually slowed down the negotiations, prolonging the period the hostages were held. The evidence showed that Shibin fought to regain his position as negotiator from Leon. After Shibin successfully did so, he promptly increased the ransom demand from what Leon had offered, thereby causing further delay until the company could talk him back down.

With the exception of one other pirate who pled guilty – Jama Idle Ibrahim (2:10cr57) (30 year sentence) – every other pirate convicted in the Eastern District of Virginia has received at least a life sentence. All defendants in the case of Unites States v. Hasan, et al. (2:10cr56)

proceeded to trial and received life plus 80 years consecutive.[2] Of the eleven defendants convicted to date in the case of United States v. Salad, et al. (2:11cr34), nine received one life sentence and two received two life sentences (concurrent). All eleven of those individuals accepted responsibility and pled guilty. Shibin should receive no less.

Shibin may argue that the life sentences imposed in other cases were a product of the mandatory sentencing regime applicable to the piracy offense and that life sentences are not necessary on the non-mandatory counts here in light of the mandatory life sentences required by other counts. But the fact is that Shibin by his actions has earned life sentences on even the non-mandatory counts. Neither party disputes that the advisory sentencing guideline offense level is 46, which places Shibin a full three levels off the advisory sentencing guideline chart. Defendants who are at level 43 face a life guideline range, and Shibin is well above that. The guidelines appropriately take into account the heinous nature of the offenses themselves and various of the aggravating circumstances of the offenses, such as the lengthy duration the hostages were held, the injuries suffered by the hostages, and the massive loss to the shipping company. But no guidelines could fully account for the torture and death inflicted on the victims of Shibin's crimes. Sentencing Shibin to life on the non-mandatory counts will send a message that even beyond the mandatory penalties proscribed by Congress, Shibin's actions merit a life sentence in their own right.

### III. Conclusion

The United States respectfully requests that the Court sentence Shibin in accordance with the recommendations herein.

---

[2] These defendants also received additional sentences on the non-mandatory counts.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By: _____/s/_____
Benjamin L. Hatch
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number (757) 441-6331
Facsimile Number (757) 441-6689
E-Mail Address - Benjamin.Hatch@usdoj.gov

Certificate of Service

I HEREBY CERTIFY that on this 6th day of August, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to:

James Broccoletti
Zoby & Broccoletti, P.C.
6663 Stoney Point S.
Norfolk, VA 23502
Counsel for defendant MOHAMMAD SAAILI SHIBIN

By: _____/s/_____
Benjamin L. Hatch
Assistant United States Attorney
Attorney for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Office Number (757) 441-6331
Facsimile Number (757) 441-6689
E-Mail Address - Benjamin.Hatch@usdoj.gov